```
               UNITED STATES DISTRICT COURT
                        FOR THE
                   DISTRICT OF VERMONT
```

UNITED STATES OF AMERICA,    :
        Plaintiff,          :
                        :
        v.                  :    File No. 1:10-cr-93-jgm-3
                        :
SHAQUAN BAPTISTE,            :
        Defendant.           :
                        :
_____:

MEMORANDUM AND ORDER
(Doc. 41)

Defendant Shaquan Baptiste has moved to suppress evidence of Oxycontin pills surrendered to law enforcement officers and statements she made while detained in connection with the warranted searches of a Chevrolet Suburban and fellow passenger. Ms. Baptiste is charged under 21 U.S.C. §§ 846 and 841(b)(1)(C) with conspiracy to distribute oxycodone, a Schedule II controlled substance. (Doc. 20.) Having considered Baptiste's Motion to Suppress (Doc. 41), the government's Response in Opposition (Doc. 45), the testimony of Officers Michael Morris, Mike Leonard, and D.E.A. Special Agent Thomas Doud at the suppression hearing on July 11, 2011, as well as post-hearing briefing (Docs. 79, 80), Ms. Baptiste's Motion to Suppress is denied for the reasons stated below.

I. Background

The following facts were adduced at the suppression hearing and are summarized in the parties' memoranda. Any factual

disputes are resolved to the extent necessary.  Fed. R. Cr. P. 12(d).

On June 15, 2010, Burlington Detective Michael Morris obtained Vermont state court search warrants authorizing searches of Ronald Lyons and the contents of a Chevy Suburban registered to Kimberly Baker.  Mr. Lyons and Ms. Baker were suspected of transporting Oxycontin from New York to Burlington, and returning to New York with drug proceeds.  These warrants were not immediately executed.

On June 24, 2010, in connection with the same investigation, Detective Morris and other officers executed a warrant to search a South Burlington apartment.  Its occupant, Marissa Brassard, told them her Oxycontin suppliers in New York City were returning to Vermont later that day with a new supply.  Officers recorded a telephone call to one of her suppliers, Terrell Jordan, who said someone named "Mello," would be arriving at the apartment that evening with a shipment.  Officers suspected either Baker's Suburban or Baptiste's Lexus[1] may be transporting the supply.

Officers observed Baker's Suburban driving northbound on Interstate 89 at approximately 7:10 p.m.  A Burlington police

---

[1] Officer Michael Morris testified that Ms. Baptiste's name was known to the officers because Terrell Jordan had been observed in Burlington at least three times, and stopped once, while driving a Lexus with New York plates, and Ms. Baptiste was known to be the registered owner of the Lexus.  When Mr. Jordan was stopped in the Lexus, he had $16,000 in currency in the back seat.

officer stopped it in South Burlington at 7:35 p.m., approximately 300 yards from Marissa's apartment.  When back-up units arrived, officers, with weapons displayed, ordered the Suburban's four occupants, Kim Baker, Thierry Mathelier, Ronald Lyons, and Shaquan Baptiste, out of the vehicle.  They were separated and placed in handcuffs.  Officers moved the Suburban to a nearby Lowe's store parking lot, approximately 100 yards from the scene of the stop.

Officer Michael Henry testified that he stood with Ms. Baptiste in front of his unmarked car after she was cuffed.  He told her she was in investigative detention and that a lead investigator would come talk to her.  She gave her name and date of birth, and stated she had come to Vermont to discuss boyfriend problems with her boyfriend's cousin.  Ms. Baptiste told Henry she was a reputable car dealer and was not involved in drug activity.  Ms. Baptiste also stated she was pregnant and needed to urinate.

Officer Henry stayed with Ms. Baptiste, while other officers searched Lyons, detained Baker and Mathelier, and searched the Suburban.  Lyons, who was questioned in a Burlington police vehicle, denied all involvement in drug activity. Mathelier, however, admitted he knew Terrell Jordan dealt in Oxycontin and that he had been asked by Jordan to travel to Vermont to stay with "Marissa," while Marissa sold pills.  Mathelier told officers Shaquan Baptiste was romantically involved with Jordan.

Officer Henry testified he removed Ms. Baptiste's handcuffs approximately fifteen to twenty minutes after the Suburban was stopped.  It is not clear how much time elapsed before Agent Doud approached them, but Doud testified he had a conversation with Baptiste after she was uncuffed that lasted approximately ten to fifteen minutes, in which she repeated much of what she had told Officer Henry.  Officer Henry estimated he was with Ms. Baptiste for approximately forty-five minutes in all.

Doud testified he told Ms. Baptiste officers believed there was contraband either in the Suburban, or on or in some of its occupants, and that suspicion was cast on her.  Baptiste denied possessing drugs and, Doud testified, "welcomed" an opportunity to be searched.  Doud told her they would arrange for a female officer to do that, and if no drugs were found, they would apply for a warrant for a body cavity search.  Ms. Baptiste responded there was no need for a warrant, that she would consent so long as the search was performed by a medical professional at a hospital. Baptiste repeated what she had told Officer Henry regarding discussing boyfriend problems with her boyfriend's cousin, stated Terrell was her boyfriend, that she suspected he was involved in drugs, but she made it a point not to mind his business.  Doud testified Ms. Baptiste told him she needed to urinate and wanted to do so as soon as possible.  Doud told her there was no female officer on the scene, that he needed a female officer to escort

her, and told her of his concern regarding destruction of evidence.  Doud testified he left Ms. Baptiste and Officer Henry to attend to other aspects of the investigation.  Doud also stated that when he left Baptiste and Henry, she was still uncuffed.

Doud went to speak with officers interviewing Ms. Baker and Mathelier and checked on the car search in the Lowe's parking lot.  He learned no contraband had been found in the Suburban.

Agent Doud then went to speak with Ms. Baker.  He testified he told her officers would pursue a warrant for a body cavity search and referred to the benefits of cooperating.  She indicated she was willing to talk and was Mirandized.  Baker soon admitted Lyons had given her two packages of pills which she had concealed in a body cavity.

At that point, Officer Jessica Stewart arrived on the scene.  Doud turned his attention to Ms. Baptiste again.  Ms. Baptiste, who had seen the female officer arrive, was now "demanding to go to the bathroom," and at some point entered Officer Stewart's car.  Doud testified that while he had intended to have Officer Stewart escort Baptiste to a restroom to search her and allow her to urinate, Officer Morris suggested that because Baker had just admitted to concealing pills in a body cavity, retrieving them was a priority, and Doud agreed.  He asked Stewart to supervise the recovery of pills from Baker, and Stewart drove to Ms. Baker's location, with Ms. Baptiste in her cruiser.

Baker surrendered a package containing 363 Oxycontin tablets that had been concealed in her vagina.

At that point, Ms. Baptiste became aware drugs had been retrieved from Ms. Baker.  Officer Trombly, who had been watching Ms. Baptiste while she was in Stewart's cruiser, reported to Doud that Ms. Baptiste wanted to "talk."  Baptiste told Doud the need to "talk" was now more important than her need to urinate.  Doud understood this to mean she wished to disclose she was concealing contraband, and administered oral <u>Miranda</u> warnings in Officer Trombly's presence.  Baptiste confessed she had 280 pills inside her underwear and this was her second drug run to Vermont.  She was arrested, and then in Officer Stewart's presence, she surrendered a bag hidden within her clothing that held 275 Oxycontin pills.  The Court credits Doud's testimony that approximately 45 minutes elapsed between the vehicle stop and the end of the search, and that an hour to an hour and a quarter elapsed between the stop and Ms. Baptiste's incriminating statements at about 8:45 p.m.

II.  <u>Discussion</u>

Ms. Baptiste's seizure, from the inception of the stop until the completion of the warranted searches of the Suburban and one of its passengers, was a detention justified as incident to the warranted automobile search.  <u>See</u> <u>United States v. Vaughan</u>, 718 F.2d 332, 334 (9th Cir. 1983) (car passenger could be briefly

detained pursuant to Michican v. Summers, 452 U.S. 692 (1981), while agents executed arrest warrants for two other passengers and conducted car search incident to those arrests).

The detention incident to the search in Ms. Baptiste's case was brief because it lasted only thirty-five to forty-five minutes, and Ms. Baptiste was only in handcuffs for approximately fifteen of those minutes, while officers secured the scene.  This minimally intrusive detention was justified because it ensured the orderly completion of the warranted searches, it minimized the risk of harm to officers, and furthered the legitimate law enforcement interest in preventing flight in the event incriminating evidence was found.  See Michican v. Summers, 452 U.S. 692, 702-03 (1981).

Furthermore, it was clear there was a connection between the occupants of the car and that Ms. Baptiste should not be allowed to simply walk away.  Ms. Baptiste was known to the officers as the owner of an automobile linked to a suspected drug dealer and possibly linked to drug activity.  Her presence in a vehicle for which officers had a search warrant, in the company of another passenger for whom officers had a search warrant, when their vehicle was suspected of transporting a drug shipment from New York that night, justified her detention during the execution of the search warrants.

When the warranted searches were completed, the officers had enough information to reasonably suspect Ms. Baptiste was connected to criminal activity and may have been secreting contraband on her person.  Again, they had a recorded conversation indicating a drug delivery from one of Terrell Jordan's associates would be delivered that night to Marissa Brassard and suspected it would arrive in either Ms. Baker's or Ms. Baptiste's vehicle.  They knew the warranted searches of the Suburban and Mr. Lyons had not turned up contraband.  They were aware of Ms. Baptiste's identity and her romantic relationship with Terrell Jordan, who had been seen driving her Lexus in Burlington.  Therefore, especially once the search warrants failed to reveal contraband, they could reasonably suspect that Ms. Baptiste or another passenger was involved in the suspected criminal activity and may have had contraband on her person.

Under Terry v. Ohio, 392 U.S. 1 (1967), the officers in this case had a right to detain Ms. Baptiste briefly following the search to investigate and dispel their reasonable suspicions.  See also Berkemer v. McCarty, 468 U.S. 420 (1984) (finding traffic stop akin to Terry stop, an officer may, without formally arresting a person, detain him to investigate circumstances arousing suspicion).  In United States v. Fountain, the Sixth Circuit held that agents, after concluding the execution of a search warrant in a home, reasonably suspected a man detained in

8

that home during the search, and they could continue to hold him in "investigative detention" in order to probe the circumstances provoking their suspicion.  <u>Fountain</u>, 2 F.3d 656, 664 (6th Cir. 1993).  The <u>Fountain</u> panel held the detention was based upon reasonable suspicion because the government showed there was "'some minimal level of objective justification'" for the detention, and the officers used the "'least intrusive means reasonably available'" to dispel suspicion in a short period of time.  <u>Id.</u> at 665 (quoting <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989) and <u>Florida v. Royer</u>, 460 U.S. 491, 500 (1983)).

In Ms. Baptiste's case, after the searches were completed, Ms. Baptiste was not handcuffed and was detained while agents investigated suspicions regarding whether contraband would be found on passengers.  She had already consented to a search of her person, and it was reasonable for the officers to wait for a female officer to assist her.  While waiting for the female officer's assistance, Ms. Baptiste learned contraband had been recovered from her fellow passenger and volunteered to "talk" to agent Doud.  She made incriminating statements only after <u>Miranda</u> warnings were issued.

While it is not clear exactly how much time elapsed between the end of the vehicle search and her incriminating statements, according to Doud's hearing testimony, Ms. Baptiste made her statements at approximately 8:45 p.m., about an hour and ten

minutes after the initial stop.  Accepting Doud's testimony that the search ended approximately forty-five minutes after the vehicle stop, Baptiste's post-search investigative detention lasted approximately thirty minutes and was not unreasonably prolonged.  See United States v. Sharpe, 470 U.S. 675, 683 (1985) (finding 20-minute traffic detention or stop proper); United States v. Glover, 957 F.2d 1004, 1013 (2d Cir. 1992) (suspect could reasonably be detained approximately thirty minutes with bags to conduct brief questioning and await arrival of narcotics dog).  Officers and agents were diligently working to dispel or confirm their suspicions regarding multiple passengers during this time.

Ms. Baptiste's detention incident to the warranted searches of the Chevrolet Suburban and Mr. Lyons was therefore justified and reasonable, and her continued detention following the completion of the searches was justified by reasonable suspicion.  It was not unduly coercive or intrusive and was reasonable in duration.

III. Conclusion

Ms. Baptiste's Motion to Suppress (Doc. 41) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 25th day of August, 2011.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge